In the Matter of the Application of ALBERT F. ECKEL, as General Guardian of HOWARD CRAVER and ROLAND CRAVER, Infants, Appellant, for an Order Revoking the Letters of Administration Granted to SARAH J. GROVER, Respondent, on the Estate of HARRY E. GROVER, Deceased, and for the Appointment of a Successor.

Fourth Department, March 7, 1917.

Executors and administrators — jurisdiction of surrogate to revoke limited letters of administration — letters revoked because of false statement in application and for false testimony given before the surrogate — appointment of administrator.

Where one claiming to be the wife of a decedent sought limited letters of administration under former section 2664 of the Code of Civil Procedure, in order that she might be relieved from giving the ordinary security for

the faithful performance of her duties, and on such application falsely stated that the decedent left him surviving no next of kin, and also on a hearing before the surrogate gave willful false testimony as to the death of an alleged husband, the surrogate should revoke such letters under sections 2569-2571 of the Code of Civil Procedure.

Under the circumstances, the petitioner for the revocation of the letters, who is the general guardian of the infant children of the decedent, should not be appointed in the place of the alleged wife, but an administrator should be appointed who will act impartially.

APPEAL by the petitioner, Albert F. Eckel, as guardian, from a decree of the Surrogate's Court of the county of Onondaga, entered in the office of said Surrogate's Court on the 3d day of February, 1916, dismissing his application herein.

*Clarence Z. Spriggs*, for the appellant.

*Ray B. Smith*, for the respondent.

DE ANGELIS, J.:

This appeal involves the power of the Surrogate's Court to revoke limited letters of administration issued pursuant to the provisions of section 2664 of the Code of Civil Procedure (1912, now section 2592) and the proper exercise of discretion by that court where the power exists.

On or about December 14, 1912, the deceased, Harry E. Grover (so called for convenience), residing in the city of Syracuse, a brakeman in the employ of the New York Central Railroad Company, met his death near Suspension Bridge in the State of New York because of the alleged negligence of the railroad company. Upon the application of the respondent, Sarah J. Grover, the alleged widow of the deceased, letters of administration upon his estate were issued to her by the Surrogate's Court of Onondaga county on the 24th day of December, 1912. In the petition made and verified by her and filed in the Surrogate's Court on the 18th day of December, 1912, upon which such letters were issued, she stated that she was the widow of the decedent and that *he left him surviving no next of kin*. On or about the 24th day of February, 1913, the respondent, as such administratrix, brought an action against the railroad company for damages for the death of the decedent

alleged to have been caused by the negligence of the railroad company in which issue has been joined and such action is now pending.

We have called the decedent Harry E. Grover for convenience. The record shows that he was the son of Charles Frederick Cooter, sometimes spelled Couter, and his wife, Carrie Craver. Decedent's father and mother lived together for about five years and then separated. His father went to Michigan, where he obtained a divorce from decedent's mother. His father now lives in Buffalo and was called as a witness in this proceeding. His mother married one George Cole, a resident of Syracuse, who was also a witness in this proceeding. Decedent was taken by his grandmother, Sarah J. Craver, his mother's mother, when he was three years old, and was brought up by her in Syracuse. His given name was Elmer and she called him Elmer Craver. He went by that name as a boy. He also appears to have been called by his real name, Elmer Cooter or Couter and by the name Harry E. Grover. The evidence shows that at different times he served in the army and navy. In or about 1902 he married one Lydia Haibt. There were born to them three children, the oldest of whom died. The other two children are the infants represented by the petitioner and appellant. Their mother died in 1908 or 1909 and soon thereafter the two children were placed in the House of Providence, an orphanage in Syracuse, where they yet remain. Albert F. Eckel, the petitioner and appellant, was appointed general guardian of these children by the Surrogate's Court of Onondaga county on or about the 23d of September, 1914.

The revocation of the letters of administration issued to the respondent was sought upon the ground that she was not the widow of the deceased; that her appointment was obtained by a false suggestion of material facts in that while she stated that she was the widow of the deceased, she was never his lawful wife, and in that she stated that he left him surviving no next of kin, whereas in fact he left him surviving these two infants, who are his next of kin, and that she was unfit for the proper execution of her office by reason of such misconduct and because of dishonesty.

It appears that the respondent married the decedent in 1911.

The claim of the petitioner is that at that time the respondent was a married woman and that she was then and ever since has been the wife of one Edward Rorapaugh, an itinerant patent medicine vendor and a gambler.

The maiden name of the respondent was Sarah La Brake, the daughter of Louis La Brake. She testified that she was working at the Beechwood Inn at Tupper Lake, N. Y., and went with one Thomas H. Rorapaugh to Prescott, Can., where on the 25th day of July, 1903, they were married at a hotel by a Presbyterian minister by the name of Craig; that there were one or two witnesses of the marriage; that she and her husband remained at Prescott a few days and then returned to Tupper Lake; that after the marriage Rorapaugh went to various parts of the country; that some time about February, 1906, her husband came to Tupper Lake very seriously ill; that she took him to a little cottage near Tupper Lake at a place called French Settlement, where she nursed him until he died on the 20th of April, 1906; that she saw him die; that he was buried in a Protestant cemetery at Tupper Lake and that she saw him buried; and that such Thomas H. Rorapaugh was the only person by the name of Rorapaugh that she ever knew. She does not claim that she ever lived with him except during the two months before he died. The evidence coming from one Edward Rorapaugh, now living at Washington, in the State of North Carolina, and members of the respondent's family, is overwhelming that Edward Rorapaugh was the Rorapaugh with whom she had had some relations and that her testimony to the death of Thomas H. Rorapaugh and her nursing him in his last illness and his burial was false.

The learned surrogate has reached the conclusion that it was Edward Rorapaugh with whom the respondent had some relations and whom possibly she may have thought she had married, but whom she never in fact did marry, and, hence, that she was the lawful wife of Harry E. Grover. The surrogate appears to have gotten the impression that there might have been some basis for her supposing that she had married Edward Rorapaugh, but that there was no basis for her claim that she had nursed any person as her husband in his last illness and had witnessed his death and burial.

Fourth Department, March, 1917.     [Vol. 177.

In the opinion of the court below there is this statement: "In view of the character of Mrs. Grover's testimony in this proceeding I regret that I do not have the power to revoke her letters on my own motion, and upon general principles, but she can only be removed in the manner prescribed by the statute."

The surrogate further stated in the course of his opinion that he did not consider the allegation in the respondent's petition for appointment as administratrix that decedent left no next of kin him surviving material, and that the respondent's story of the death of her alleged husband was not worthy of belief.

This proceeding was taken pursuant to sections 2569, 2570 and 2571 of the Code of Civil Procedure and we are of opinion that the evidence in the case shows that the respondent has been guilty of such misconduct, such dishonesty, such want of understanding as to justify the conclusion that she is unfit for the due execution of her office (Code Civ. Proc. § 2569, subd. 2), and that such evidence also shows that her appointment was obtained by a false suggestion of a material fact. (Id. subd. 4.) We think that the surrogate was in error in holding that he did not have the power to revoke these letters of administration and that on the contrary he had such power and should have revoked the letters. We also think that he was in error in holding that the statement in the petition for the respondent's appointment as administratrix that the decedent left him surviving no next of kin was immaterial. It must be borne in mind that the respondent applied for limited letters of administration to the end that she might be relieved from giving the ordinary security for the faithful performance of her duties. Her design in making this statement was to induce the surrogate to require slight security because she who asked for the appointment was alone interested in the proceeds of the trust. The evidence establishes beyond the shadow of a doubt that when she made the statement she was in possession of information that would lead a reasonable person to believe that the two infants represented by the petitioner were the children and the next of kin of the decedent. Assuming that she was the lawful wife of the decedent at the time of his death, and, therefore, entitled to the office of administratrix of his estate, her appointment was obtained by a false suggestion of a mate-

rial fact. This statement was necessarily a dishonest statement, and had such relation to the office which she sought as to permit the inference of such dishonesty in her as would justify the revocation of the letters of administration. Again, the willful false testimony given by her on the hearing before the surrogate to account for the death of her alleged husband for the purpose of establishing her right to retain the office sought to be taken from her was, in our opinion, of such character as required her removal from her trust.

We think the letters of administration issued to the respondent should be revoked. We do not think the petitioner should be appointed in her place but that an administrator should be appointed who will act impartially in the premises.

It follows that the order and decree appealed from should be reversed and this proceeding remitted to the Surrogate's Court to be acted upon in accordance with the views we have expressed.

All concurred.

Decree reversed upon the law and facts, without costs, and the matter remitted to the Surrogate's Court for its further action thereon.